IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANTHONY BERNARDLY JONES | CRIMINAL ACTION<br>NO. 02-0778 |

**PAPPERT, J.**                                                                                 **December 23, 2020**

**MEMORANDUM**

      Anthony Bernardly Jones seeks in two separate Motions compassionate release or a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). The Court denies the Motions because extraordinary reasons do not warrant Jones's release and, in any event, the factors under 18 U.S.C. § 3553(a) counsel against granting relief.

I

A

      In 2003, a jury convicted Jones of armed bank robbery in violation of 18 U.S.C § 2113(d) and brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(i) and (ii). (Gov't Resp. 2, ECF No. 109.) On August 29, 2002, he robbed a bank of $10,680 while carrying a semi-automatic handgun and wearing a police scanner. (*Id.* at 1–2.) Jones remained a fugitive until his arrest in October of 2002, at which time he was shot in the leg while attempting to flee. (*Id.* at 2.)

      In 2004, Jones was sentenced to 184 months' imprisonment, 100 months for the § 2113 conviction and a consecutive eighty-four months on the § 924(c) charge. (Judgment, ECF No. 48.) His sentence was vacated following an appeal regarding a certain enhancement, *United States v. Jones*, 149 F. App'x 67, 69 (3d Cir. 2005), but he

was resentenced to the same 184 months on November 8, 2005.[1]  (Amended Judgment, ECF No. 62.)

Jones is forty-four years old and, counting accrued good time credit, he has served approximately 130 months of his sentence.  *See* (Gov't Resp. 3).  His current anticipated release date is April 17, 2024.  (*Id.*)

B

On August 5, 2020, Jones petitioned the warden at FCI McKean seeking compassionate release or a reduction in sentence citing as an "extraordinary or compelling" reason "unique medical concerns that present[] a heightened risk for infections and serious medical complications" if he contracted COVID-19.  *See* (Mot. Ex. 1, ECF No. 101); (Suppl. Mot. Ex. 1B, ECF No. 6).  He claimed he was supposed to be on blood thinning medication and avoiding strenuous workouts to avoid blood clots in the leg where he was wounded while fleeing police in 2002.  (*Id.*); (Gov't Resp. 2.)  He was concerned FCI McKean did not adequately allow him to "practice effective social distancing" and COVID-19 "is a respiratory virus that causes blood clots in those who are infected with it."  (Mot. Ex. 1.)  The warden denied Jones's request on August 10.  (*Id.* at Ex. 2.)

On August 12, Jones sought reconsideration of the warden's decision.  (Suppl. Mot. at Ex. 1B.)  He argued he was "at a heightened risk for severe illness or death from COVID-19" because, in addition to his gunshot wound, he was diagnosed with high blood pressure, high cholesterol, borderline diabetes and thyroid issues during his incarceration.  *See* (*id.*).  He also said that he formerly smoked.  *See* (*id.*).  He explained

---

[1]    Jones was sentenced by Judge Ronald L. Buckwalter.  His case was reassigned to this Court on May 11, 2016.  (Order Reassigning Case, ECF No. 93.)

he has worked to rehabilitate himself by, for example, completing over twenty programs related to recidivism reduction while in custody. *See* (*id.*). The record does not show whether Jones received a response to this request. *See* (*id.* at 2–3, Ex. 1B).

On September 8, 2020, Jones filed a new request for sentence reduction at FCI McKean for the allegedly extraordinary and compelling reason that the Sentencing Guidelines have been amended since his sentencing in a way that would have reduced his Guideline range. (*Id.* at Ex. 2B.) Specifically, when sentenced, one point was added to Jones's offense level pursuant to U.S.S.G. § 2B3.1(b)(7)(B) because he stole more than $10,000. (*Id.*) In 2015, the Sentencing Commission amended U.S.S.G. § 2B3.1(b)(7) ("Amendment 791") to eliminate additional offense level points for robberies causing a loss under $20,000. (*Id.*) The record does not show whether Jones received a response to this request either. *See* (*id.*).

C

Having exhausted his prison remedies, Jones now moves the Court for compassionate release or a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A) for the same reasons stated in his FCI McKean requests. *See generally* (Mot., ECF. No. 101); (Suppl. Mot., ECF No. 106).[2] He adds that recent limitations on his activity and other conditions at FCI McKean during COVID-19 have likely raised his cholesterol further. *See* (Reply 11–17, ECF No. 117). He also diagnoses himself with "extremely severe kidney failure," but acknowledges "there has never been a doctor or professional

---

[2]     Jones's initial Motion was appended to a Request for the Appointment of Counsel to assist with his Motion. (Mot. at 15–29.) The Court referred the Motion to the Federal Community Defender Office, which declined to seek compassionate release on Jones's behalf. (Order Referring Mot., ECF No. 102); (Letter Declining to Seek Release, ECF No. 108.) Jones filed a Supplemental Motion thereafter.

health care provider to actually put their stamp on" this diagnosis. (*Id.* at 17–18.) Jones filed personal affidavits, numerous exhibits and medical records with the Court to support his Motions. *See* (Mot. 4–14, 25–72); (Suppl. Mot. 4–10, 31–63); (Letter to Court Sept. 13, 2020 4–15, ECF. No. 104); (Def. Medical Records 2–14, ECF No. 116).[3]

The Government responds that Jones's recent Bureau of Prisons medical records, which the Government provided to the Court, *see* (Gov't Ex. A, ECF No. 110), suggest Jones "presents very few medical issues" and do not corroborate his alleged health conditions. (Gov't Resp. 5, 15.) Moreover, Jones "does not seem to have any conditions that are not well-controlled at this time" at FCI McKean. (*Id.* at 5.) It also argues that Amendment 791 to the Sentencing Guidelines does not present an extraordinary and compelling reason for Jones's release or a sentence reduction. *See generally* (Gov't Suppl. Resp., ECF No. 120).

II

A

A district court may reduce a defendant's sentence if (1) "extraordinary and compelling reasons warrant" a reduction; (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission"; and (3) the sentencing factors set forth in § 3553(a), to the extent they are applicable, warrant a reduction. 18 U.S.C. § 3582(c)(1)(A). Relevant § 3553(a) sentencing factors include, among others, "the nature and circumstances of the offense" as well as the need for the sentence to "reflect the seriousness of the offense . . . promote respect for the

---

[3] Jones also attempts in his Motions to relitigate his criminal history and offense conduct and criticizes his trial counsel. These portions of the Motions are not properly before the Court in a compassionate release context.

law, . . . provide just punishment for the offense" and "protect the public from further crimes of the defendant." 18 U.S.C. §§ 3553(a)(1), (2)(A), (2)(C).

B

Jones has not presented extraordinary and compelling reasons for his release or a sentence reduction. His medical records do not corroborate his self-diagnosed kidney failure. *See generally* (Def. Medical Records); (Gov't Ex. A). Nor do they support his alleged "borderline" diabetes, thyroid issues and high cholesterol. *See generally* (Def. Medical Records); (Gov't Ex. A). In any event, high cholesterol, borderline diabetes and thyroid issues are not COVID-19 risk factors. *See* Coronavirus Disease 2019, *People at Increased Risk*, Center for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 22, 2020). Jones's concern for blood clots in his leg does not increase his risk of illness from COVID-19 either. *See id.*

High blood pressure, or hypertension, "might" increase Jones's risk for severe illness from COVID-19 according to "mixed evidence" reviewed by the CDC. *See id.*; *see also* COVID-19 (Coronavirus Disease), *Evidence Used to Update the List of Underlying Medical Conditions that Increase a Person's Risk of Severe Illness from COVID-19*, Center for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html (last visited Dec. 22, 2020). But neither Jones nor his medical records indicate how high his blood pressure supposedly is. And courts have found that high blood pressure is not an extraordinary and compelling reason for an inmate's release. *See, e.g.*, *United States v. Mason*, No. 18-329, 2020 WL 4034835, at *3 (W.D. Pa. July 17, 2020) ("[Defendant's] hypertension is also

5

not a condition that increases his risk of major complications from COVID-19, or that predisposes him to more readily contract the virus."); *United States v. Thomas*, 471 F. Supp. 3d 745, 749–50 (W.D. Va. 2020) ("Hypertension, or high blood pressure, a condition that the CDC estimates impacts 43.8% of the United States adult population, alone does not constitute and 'extraordinary and compelling reason.'"). Moreover, "[w]here, as here, there is no indication that the defendant's hypertension cannot be properly controlled via medication or other appropriate medical care, courts routinely hold that compassionate release is not warranted." *United States v. Ackerman*, No. 11-740-KSM-1, 2020 WL 5017618, at *5 (E.D. Pa. Aug. 25, 2020) (collecting cases).

Being a former smoker, which is noted in his medical records, could place Jones at increased risk of severe illness from COVID-19. *See* Coronavirus Disease 2019, *People at Increased Risk*, Center for Disease Control and Prevention, https://www.cdc.gov/ coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 22, 2020). Jones, however, provides no detail regarding his tobacco usage, presents no ailments associated with smoking and has been in federal prison since 2011, where smoking is banned. *See* (Gov't Resp. 16–17 ("It is well-established that the health risks presented by smoking drop dramatically once a user quits and years pass.")). He also concedes that his status as a smoker "many years ago, in[] and[] of[] itself, does not present an extraordinary circumstance" warranting compassionate release. (Reply 16.) Courts have found the same. *See, e.g.*, *United States v. Hoopes*, No. 16-509-2, 2020 WL 6889211, at *4 (E.D. Pa. Nov. 24, 2020) (denying compassionate release for seventy-three-year-old obese former smoker); *United States v. Rager*, No. 2:13-cr-199, 2020 WL 7395324, at * (S.D. Ohio Dec. 17,

2020) (denying release of former smoker where medical records showed no physical symptoms from smoking and evidence did not demonstrate defendant smoked since 2014 federal detainment); *Musa v. United States*, --- F. Supp. 3d ----, 2020 WL 6873506, at *8 (S.D.N.Y. Nov. 23, 2020) ("[T]he mere assertion that a defendant is a former smoker is insufficient to merit release.").

B

Amendment 791 does not present an extraordinary and compelling reason for providing Jones relief under § 3582(c)(1)(A) either. Amendment 791 adjusted the dollar value losses for which offense level points could be added under § 2B3.1(b)(7)(B) "[d]ue to inflationary changes" causing "a gradual decrease in the value of the dollar over time." *See* U.S. Sentencing Guidelines Manual, App'x C Amendment 791 (U.S. Sentencing Comm'n 2015), https://guidelines.ussc.gov/ac/791. The effective date of Amendment 791 is November 1, 2015—more than thirteen years after Jones's offense conduct—and the value of money differed in 2015 from 2002. *See id*. "It would be anomalous" to reduce Jones's sentence for an "offense[] committed in earlier years based on the reduced value years later of the sums involved." (Gov't Suppl. Resp. 4.)

C

While Jones's rehabilitative efforts during his incarceration are commendable, rehabilitation alone does not establish an extraordinary and compelling reason for his release. *See* 28 U.S.C. § 994(t). And while a combination of factors can together establish extraordinary and compelling reasons for relief, no combination of Jones's insufficient arguments does so here.

7

D

Even if extraordinary and compelling reasons did exist for Jones's release, the 18 U.S.C. § 3553(a) factors counsel against releasing him. *See United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020) (affirming denial of compassionate release for at-risk inmate because "the § 3553(a) factors weigh[ed]" against release). Jones endangered numerous individuals in committing his offense. (Gov't Resp. 2–3.) He then evaded arrest for over two months and further endangered the public in attempting to flee when arrested. (*Id.*) He also perjured himself at trial by providing a false alibi. (*Id.*) Releasing Jones or reducing his sentence at this time would not promote respect for the law, provide just punishment for his serious offense or adequately protect the public.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.